Good morning, Your Honor. David Hellbrown appearing on behalf of the plaintiff and appellant David Demarest. And, Your Honor, I would ask that we reserve five minutes of our time for rebuttal. All right. I'll try to help you, but keep your eye on the clock. Yes, Your Honor, and may it please the Court. The City of Vallejo impermissibly demanded on sanction of arrest identification from every motorist passing through its roadblock sobriety checkpoint, regardless of whether the motorist displayed any indicia of intoxication, and regardless of whether any other facts were developed that indicated reasonable suspicion of any crime. In so doing, they crossed a clear constitutional line and converted a voluntary encounter with police into an without the constitutionally required reasonable suspicion of crime. And the type of police intrusion by demanding identification, such as a driver's license, without reasonable suspicion of crime has been repeatedly and clearly held unconstitutional since Brown v. Texas in 1979. But the Supreme Court in SITS has upheld the constitutionality of a sobriety checkpoint, and in Delaware v. Prowse, although they found the one invalid in that case, they certainly suggested that it could be permissible, and then Brown v. Texas seems to confirm that. So if either type of checkpoint is permissible, why can't they be combined as they were here and therefore be valid? Yes, Your Honor, there are two answers to that. First of all, the Delaware v. Prowse checkpoint that was permitted in this case, it is undisputed that they were not doing what Delaware v. Prowse authorized, which was to check driver's licenses to catch unlicensed drivers. The excerpt of record number 260 is the defendant's stipulation that they were not doing that. They were not trying to catch unlicensed drivers. So that takes it completely out of Delaware v. Prowse. But let me address your other point, Your Honor, which is if it is okay under the proper circumstance, which is not presented here, to have a properly created programmatic driver's license check, and if it is also okay to have a Michigan v. Sitz style sobriety checkpoint, then why isn't it okay to have the two of them together? And even though that is not this case, Your Honor, the answer is it probably is not constitutionally permissible, Your Honor, because of the way that it would unduly prolong stops of all motorists, because it would no longer be brief. I think it would probably be okay, Your Honor, to have separate sobriety checkpoints at different places for all drivers and a separate driver's license verification checkpoint for drivers in that location at that time. But I think, Your Honor, and this has never been tested, no court has reviewed it, certainly not the Supreme Court, to merge the two, to have the two back to as a dual checkpoint, I think might cross the line of what is required to be a very, very brief, strictly tailored intrusion on three citizens, all motorists on the roadway, Your Honor. So what you're saying is that if they had set up two separate checkpoints, one for driver's license and one for sobriety, say, 50 feet apart, then that's constitutionally permissible, but not to have one single sign saying DUI slash unlicensed or driver's license check and have it merge essentially into one checkpoint. That's a problem. So having it 50 feet apart, not a problem. And then having it together, that's a problem. Essentially, yes, Your Honor. Although, again, the facts of this case are such that it is not a Delaware v. Prowse case at all. The defendants have to catch unlicensed drivers. The only reason they were asking for driver's licenses, the testimony is clear from their Lieutenant Nicolini, was for identification. They were trying to identify people. And in fact, he said, if you had identification, you could go on your way. This was not a Delaware v. Prowse situation at all, Your Honor. But to answer your question, yes, conceivably, if they had separate checkpoints that were correct programmatically under SITS and under Delaware v. Prowse, and they were separate checkpoints at separate locations, stopping all drivers separately, that might indeed pass constitutional muster. That is not the case here, Your Honor. But even if it were only done as a SITS sobriety checkpoint, why couldn't they add in as an ancillary part of the inquiry there what is clearly a related inquiry into whether or not this person is properly licensed and has the capability to be driving the vehicle safely on the road? Two answers, Your Honor. Number one, of course they can ask. We do not challenge that they can ask for identification or a driver's license. What we submit is they cannot demand it under sanction of arrest. As in the Ninth Circuit's case of U.S. v. Landeros, the officer could ask for identification from the passenger without reasonable suspicion. But when the passenger declined to present it, as the Ninth Circuit said, the officer should have taken no for an answer. The difference is consent versus involuntary demand under sanction of arrest, Your Honor. But why can't they demand it? They can't demand it, Your Honor, because under Brown v. Texas and Hibble v. Landeros' case on that subject, they cannot demand identification, which is what it is stipulated they were doing here, all their testimony. They cannot do that without individualized reasonable suspicion. And because under all of the cases regarding checkpoints, because these are narrow exceptions to individualized suspicion, they must be strictly and narrowly limited to just their purpose. Once you conclude that the motorist does not appear intoxicated, they have to move on. It's supposed to be a brief stop. In fact, defendants say their stop is supposed to be no more than about 15 seconds. But it is undisputed here, Your Honor, that my client was not suspected of any intoxication. It is also undisputed... If the purpose is highway safety, can they demand the license at that point? The short answer is no, Your Honor, but let me elaborate. The Supreme Court has made very clear in Sitz and in Edmonds v. City of Indianapolis that it is the very unique and grave interest in prohibiting drunk driving that even permits this sort of exception to Terry v. Ohio and every case that requires individualized suspicion to have an involuntary intrusion of the police. So I hope that answers your question, Your Honor. All right. Go ahead. Your Honor, in this case, my client, David Demarest, was then forcefully pulled from his car without warning. He was forcefully handcuffed while other officers pointed tasers at him. His rental car was impounded and he spent  a week in the hospital. He had been trying to protect his spine when he merely asked the officer if he was being detained, if there was a reason for him to provide identification. He was asserting his Fourth Amendment rights and in retaliation for that, the officer overreacted. Indeed, according to Mr. Demarest's testimony, the officer reacted angrily and emotionally and yanked him out of his car with a twist control lock, which is a non-trivial type of force, Your Honor, which was completely unnecessary and excessive here under the circumstances where it is undisputed my client was not a threat to anyone. It is undisputed that this was a very minor sort of crime, if indeed it was a crime to not present your identification under these circumstances. Again, the Supreme Court cases regarding these unique roadblock checkpoints are very clear that they may not employ their discretion. Police discretion should be strictly limited to the purpose of the roadblock checkpoint, which was assessing sobriety. So again, Your Honor, they can ask to see a driver's license as a way of conversing with someone to see if they have blurry eyes or slurred speech or nervous habits indicative of intoxication, but they cannot demand it. And this officer used her discretion, she admits in the record, she used her discretion to decide to arrest my client for that. That crossed the constitutional line and converted what was a voluntary interaction with police into an involuntary intrusion and investigatory stop. The officer should have simply either let him go once it was clear she had no indication that he was intoxicated because he was not. It's undisputed he was not. I know you're down to just a little less than five minutes. Did you want to reserve the rest of your time? Yes, Your Honor. We'll discuss excessive force further then. Thank you, Your Honor. Ms. Knight. Good morning. May it please the court. Caitlin Knight for Officer Jody Brown and the City of Vallejo. It is well established that a DUI checkpoint is a reasonable seizure under the Fourth Amendment provided it meets certain requirements. And as the court noted, the Supreme Court has suggested that a checkpoint to verify the validity of a driver's license and registration would also be permissible if it meets those same requirements. The plaintiff puts an emphasis on the fact that you had this peculiar stipulation that it was not a purpose of this checkpoint to check for unlicensed drivers. If that's true, why were they asking for it? Why were they demanding them? Well, Your Honor, I've always viewed that as kind of an odd argument and a little bit of a semantic issue. The checkpoint was established for DUI purposes. It was chosen based on prior incidents of intoxicated driving. During the checkpoint, the officers will hand out a pamphlet that educates about intoxicated driving. That's really the reason that it exists. However, it's very clear that checking a driver's license has always been part of the officer's mission in the checkpoint. The operations plan for the checkpoint explicitly requires each officer, not using their discretion, to verify that drivers have a license in addition to checking for intoxication and then send them on their way. So why did you stipulate to that statement? What was the context in which that stipulation was made? The context, Your Honor, was that we were having some disputes about discovery and trying to get at the reason that the checkpoints were established. And because, again, I see that as a little bit of a semantic argument, what is the reason that the checkpoint is there, as distinct from what the mission of the officer is during the checkpoint. I didn't see that as a problem. I think it's very clear that we always intended at these checkpoints for officers to verify licenses, that the process, if an individual could not produce a license or would not produce a license, is further processing. And that is something that, again, is outlined in the operations, and it's also in the signage. When a driver approaches this checkpoint, it says... I think the wrinkle here is really what the government essentially stipulated, kind of gave away, that the purpose is really to deter and uncover drunk driving. So that basically then triggers the question, sure, as part of trying to you can engage and you can ask for a license, but demanding it then takes it outside of the purpose as defined by the city, which is limited to uncovering and deterring drunk driving offenses. That's really the issue. It's the posture with that stipulation in the record. Why doesn't that create a problem? Well, Your Honor, I think, again, it's the definition of purpose. So in my view, the purpose is the reason that these checkpoints are established. It isn't encompassing all of the city's motivations and all of the checks that are occurring during this. It's simply why it was established. And so I would feel comfortable stipulating that it was established for DUI, education related to DUI, those purposes. However, really the motive of the city is to ensure that there are safe drivers on the road. It's all tied into this public safety, traffic safety concern and motive. And it's, again, undisputed that the city always intended each driver to check a license as the individual moves through the checkpoint. The signage alerts every driver entering, have your driver's license ready, DUI slash driver's license checkpoint. The operations plan says, engage in a dialogue with drivers, determine if they're intoxicated and verify they have a license. The city is not going to make that a primary focus of the checkpoint. The operations plan doesn't direct run every license. I think that would make it fundamentally different. Then it would be truly a dual purpose in setting up the checkpoint. But the city's primary function here, their reason for establishing the checkpoint is DUI. It's just that... The stipulation doesn't say primary. What it says is you stipulated that, quote, catching and discouraging unlicensed drivers is not a purpose of these checkpoints, of those checkpoints, close quote. Does that take it off the table as part of the mission? I don't think it does, Your Honor. I think that the purpose is the reason the checkpoint is established. Not to limit what the mission. What was the discovery that we're trying to get that led to that stipulation? I believe it was additional depositions, Your Honor, if I remember correctly. Trying to get additional information from more officers. How did that stipulation help on it? Were you trying to close off inquiry into license checks? No, Your Honor. I was a little bit surprised that that resolves the issue, frankly. And I think Mr. Helpern may be at a disadvantage because this was prior counsel, so I'm not sure what what was in his mind at the time. Is it your position that you could run warrant checks during this license checkpoint? No, Your Honor. I don't believe so because that's not something that was part of the operations plan. And so an important piece of the checkpoint... It's clear that it was not a component of this. That is in the plan. But I'm asking you as a question of where your argument leads. Is it taking your position, would that lead to the conclusion that you could do warrant checks as well? I think that it would be permissible, Your Honor, to have a driver's license and sobriety checkpoint, to truly have that be dual-purpose. In this case, it is a bit different because we don't run that extra check. So the verifying a license, it's important. We certainly catch plenty of drivers who don't have a valid driver's license coming through those checkpoints. But the city is not requiring that additional intrusion. They're not prolonging the drivers have a valid license. I think it would be permissible, potentially, to do that. That's just not the case that we had here. It wouldn't be generalized law enforcement? I think it potentially could be, Your Honor. I think that the Supreme Court's opinion on DUI and or driver's license checkpoints leaves that possibility open. They're essentially saying if you meet these additional requirements, you can engage in this type of checkpoint. And they've essentially blessed that type of checkpoint in Delaware, in Brown, and then again in Edmond. They go through and distinguish a narcotics checkpoint from... There's no indication in any of those cases that they've ever allowed a warrant check. And you're trying to import Rodriguez from the Terry stop context into the checkpoint context. But one thing that Rodriguez does allow is warrant checks. So it raises a question whether or not the simple equivalence in just importing Rodriguez over is, in fact, consistent with the checkpoint case law. I think it would be, Your Honor, because it's really... If you're going to run the license to determine that it's valid, the warrant check doesn't prolong it. So that's where I suspect the court would go with that. Again, that's not this case because we're not running the checks. But I think it would be permissible. In this case, I think it's most significant that there was a warning that individuals would be asked for their driver's license ahead of the checkpoint stop. The signage clearly says DUI slash driver's license checkpoint. Have your license ready. I think that's important. I also think it's very important that the operations plan did not leave officers discretion not to do so. The case law related to ordinary mission of the traffic stop, I do also think should be persuasive here. I understand that a checkpoint is a little bit different from a stop where you're pulling someone over for a vehicle infraction based on suspicion. However, the court has said that the mission does include ordinary inquiries incident to a traffic stop. It includes checking for a license, registration, insurance, and warrants. And the reason for that is because it serves the same objectives. And here we have the objective of traffic safety. Ensuring that drivers on the road are appropriately licensed is a traffic safety issue. It's one thing to for the Supreme Court to say, as they did in Rodriguez, that you can do a warrant check in the context of a person whom you already reasonably suspect of committing a crime. Whereas a checkpoint, which is narrowly tailored to a specific unit, the court has never said that a warrant check is permissible. And so that suggests to me that your simple analogy that you just made to Rodriguez is wrong. Well, Your Honor, I believe Rodriguez referred to the warrant check as part of an officer safety issue, which it noted was important in the context of traffic stops because those do tend to raise officer safety concerns and be dangerous. So I think that there is reasoning there to support that carryover of Rodriguez. I would like to address one of the points made by Mr. Helbron. He cites to Landeros and City of Indianapolis, I would argue that requesting or driver's license from a passenger is fundamentally different. The driver under California law is required to have a license on them at all times when they're operating a motor vehicle and is required to present that to a peace officer who's enforcing the vehicle code. And that simply puts them in a very different position from a passenger who need not have a driver's license or identification. I'd also like to address the argument that Officer Brown's discretion in deciding whether or not to arrest Mr. Demarest took this out of the zone of a lawful checkpoint stop. I don't believe that that is an argument that can carry over. The officers did not have discretion in whether or not to demand a license at the stop. The operations plan makes that very clear and the practice was they demand a license from each driver and if the driver does not the discretion of whether or not to make an arrest or bring an individual to jail is just fundamentally different there. So I don't believe that applies. Even if the court found that request for license was not sufficiently related to the mission or purpose of the stop, however, I believe that we could still demand a driver's license because it does not unreasonably prolong the stop. So in this case, our officer testified that it takes approximately 10 seconds for the entire contact, assuming that the individual produces an apparently valid license. If the individual does not, then again you go to secondary screening. Now I know Mr. Demarest's argument is that the refusal to present a license is the thing that prolongs the stop. However, I don't believe that he can rely on his own obstruction to make that argument. If an individual produces a license as a driver in California is required to do, then the stop takes approximately 10 seconds and we know under SIDS that up to 25 seconds has been held to be reasonable. If we decide that we need to get there as to whether the stop was unduly prolonged, is that something that we send back to the district court to determine in the first instance? No, I believe they can determine based on the unduly prolonged because that is a that's a pure question of law. There is whether his refusal is the thing that unreasonably prolongs the stop or whether it's the officer's demand. It all goes to the same question of whether it's lawful to require that license to be produced at a sobriety checkpoint that meets all of these requirements where there's no discretion, where there's been notice of the fact that licenses would be demanded and the entering it. If the court finds that that was a lawful demand, then his refusal is unlawful and refusal of a lawful order is not something that could form the basis of a claim that it was unreasonably prolonged. The Rodriguez case and the Illinois versus Caballos case I think support that as well with the dog sniff. They found that even if the dog sniff is unrelated, so long as it does not unreasonably prolong the stop, if it's done at the same time that the license is being checked for example, that is permissible. I think you would get a different ruling there if the individual exited the vehicle and tried to prevent the dog from running around the vehicle. Then the person would be obstructing the investigation unfairly and that would be the thing that prolongs the stop as opposed to the dog sniff in the first instance. I think you would similarly have a different result if an individual pulled into a sobriety checkpoint and refused to pull his window down, prolonging the stop in that instance. I don't think that Mr. Demarest can rely on his own obstruction to argue that the stop was unreasonably prolonged by demanding a driver's license at the checkpoint. The court did not reach qualified immunity because it determines that the force was not excessive as a matter of law, but given the unsettled nature of this area of law, I think that the record clearly supports qualified immunity in the event that the court gets to that issue. Of course, we believe that it should be resolved on the grounds that the district court found. If you have no other questions. Thank you counsel. Thank you. Go ahead. Thank you, Your Honor. I needed to unmute. Your Honor, the argument of the defendant's legal argument only points up and accents the problem with what happened here, which is that the City of Vallejo Police Department conflates an unlawful stop and the police authority that flows from that, based on reasonable suspicion, they conflate that with the very, very limited, strictly limited, scope and purpose of these roadblock checkpoints, as stated by the Supreme Court. And so we have a Monell problem here. We have a ninth cause of action for Monell because the entire structure of this sobriety checkpoint, to the extent it purports to be able to demand driver's licenses with no such purpose to catch unlicensed drivers, is wrongful. I want to point out that their own tenant in testimony made very clear that they were only asking for ID to engage in conversation and as a way to see if they were intoxicated. That's record page 210. They also stated having a policeman with the authority to check your license impresses the public with their authority, that this is serious. In addition, the problem with conflating Terry's stop with a checkpoint stop is the unlimited, unbridled discretion given to officers as occurred here and as argued for just now by my worthy counsel when she said that just because the program says they have to verify licenses, it doesn't limit what an officer can do. In fact, what an officer can do must be strictly limited here under all of the cases that we cited. I want to point out that in the case that we cited of Wingate versus Fulford in a Rule 28 letter of the Fourth Circuit, a driver had his license demanded and that was a wrongful version of an involuntary encounter into an investigatory stop without reasonable suspicion, clearly constitutionally impermissible. Your Honor, I would like to address the... I'm missing something here. I thought that your claim was directed specifically at asking for a driver's license. You seem to be moving that they shouldn't have put up any type of roadblock. No, not at all, Your Honor. A sobriety checkpoint with a proper program is correct. It was to the extent that they purported to demand identification, which is what their own testimony is. They were demanding identification, not trying to catch unlicensed drivers. If I may move on to... Well, what about Prance? The Supreme Court suggested a roadblock for the purpose of verifying driver's license and vehicle registration would be permissible. You're saying it's not permissible at all. No, Your Honor. That's not correct. What we're saying is this is not a Prouse situation at all, because they have stipulated they were not doing what Prouse authorizes. They were not attempting to catch unlicensed drivers. If I may address the excessive force issue, because the law is clear that you may not use non-trivial force against someone who is passively resisting, and at most, perhaps, Mr. Demarest was passively resisting, although I believe he was not resisting at all. According to his own testimony, he said that when the police grabbed him and twisted his arm and yanked him out of the car without warning, he tried to go with it, and he tried to de-escalate the situation. And Your Honor, the cases are clear that a twist-lock control hold is non-trivial force, and so there is clearly a question of fact for a reasonable jury to decide here that that force was excessive and unnecessary under the circumstances. Did the district court rule on this? The district court did rule. The district court found, as a matter of law, that the use of force was not excessive and unreasonable, and the district court erred as a matter of law in taking that issue away from the jury. I don't even understand why the issue came before the court. Are you saying that the issue is, regardless of what happened with the driver's license, this issue would come up logically? Is that what it is? I am saying that this is a separate claim for excessive force, which I believe the court must return to the district court for trial, separate and apart from the issue of probable cause, which we believe clearly did not exist here and clearly exceeded the constitution of the court. Ah, I see. Okay, I see where you're going. Thank you. Thank you, Your Honor. All right, you're over time, but we thank you. Yes, just one clarifying question. I just want to make clear, do you agree that the only parties and issues on appeal are Brown and the city and the first and ninth causes of action and that the other persons are not before us? Yes, Your Honor. All right, thank you. Thank you, Your Honor. All right, thank you very much to both sides for your argument today. The matter is submitted and will be in recess until tomorrow morning. All rise. This court for this session stands adjourned.
judges: Wallace, Nguyen, Collins